UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| KATHERYN DORINE CAMPBELL,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>)<br>CAROLYN W. COLVIN,  )<br>Acting Commissioner of Social Security,  )<br>)<br>Defendant.[1]  ) | CIVIL ACTION NO.<br>5:12-CV-00106-BG<br>ECF |

## REPORT AND RECOMMENDATION

### Statement of the Case

Pursuant to 42 U.S.C. § 1383(c), Plaintiff Katheryn Dorine Campbell seeks judicial review of a decision of the Commissioner of Social Security denying her application for supplemental security income. The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. Pursuant to the Order transferring the case, the undersigned now files this Report and Recommendation.

Campbell claims that she became disabled on August 15, 2006, at age 38 due to depression and panic and anxiety attacks. On December 2, 2010, Campbell and a vocational expert testified at a hearing before an administrative law judge (ALJ). Campbell was represented by counsel at the hearing. The ALJ determined on February 15, 2011, that Campbell was not disabled because she could perform jobs that existed in significant numbers in the national economy. The Appeals

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration, succeeding former Commissioner Michael J. Astrue. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is automatically substituted as Defendant in this case.

1

Council denied review on May 21, 2012. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Standard of Review

A plaintiff is disabled and may be entitled to disability insurance benefits and supplemental security income if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3) (2013).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. § 416.920(a)(4) (2013). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity (RFC), defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 416.920(a)(4), 416.945(a)(1).

The court must affirm the Commissioner's decision unless it finds that (1) the ALJ applied an incorrect legal standard or (2) the ALJ's determination is not supported by substantial evidence. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## Discussion

I. The ALJ properly relied on Dr. Phelan's conclusions, which are supported by substantial evidence.

Consulting psychologist Constance Smith, Ed.D., and state agency consultant Caren Phelan, Ph.D., provided medical opinions in connection with this case to help the Commissioner determine Campbell's eligibility for benefits. (Tr. 201–06, 210–26.) Dr. Smith's findings were based on a consultative examination of Campbell. (Tr. 202–06.) Dr. Phelan's conclusions were based on her review of Campbell's evidence of record, which included Dr. Smith's report. (Tr. 222, 224.) The ALJ assigned little weight to Dr. Smith's conclusions and significant weight to Dr. Phelan's findings. (Tr. 25.) Campbell argues that substantial evidence does not support this decision.

"In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of . . . examining sources." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). "[A]n ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical

3

evidence and do not contradict those of the examining physician." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)

According to Dr. Phelan, the evidence of record showed that Campbell exhibited normal memory, good concentration, intact judgment and insight, and adequate and independent activities of daily living. (Tr. 222.) Dr. Phelan concluded that Campbell "may be somewhat limited" by her symptoms but that the symptoms did not wholly compromise her "ability to function independently, appropriately[,] and effectively on a sustained basis." *Id.* She further concluded that Campbell could understand, remember, and carry out detailed but not complex instructions; make decisions; attend and concentrate for extended periods; accept instructions; and respond appropriately to changes in a routine work setting. (Tr. 226.)

Dr. Smith's report supports Dr. Phelan's conclusions. For example, Dr. Smith observed that Campbell communicated easily, was cooperative, and appeared well groomed. (Tr. 202.) She also observed that Campbell's responses were reasonable and appropriate and that her judgment and insight were intact. (Tr. 204–05.) She noted that Campbell could do simple math problems and functioned in the average range of intelligence. (Tr. 205.) Dr. Smith also found that Campbell could remember her birthday and the names of the current president, three past presidents, her high school, and former teachers. *Id.* According to Dr. Smith, Campbell reported that she took her medication on her own without any reminders and regularly cleaned her house, cooked, watched television, played computer games, spent time outside with her dog, and took care of her personal hygiene daily. (Tr. 203, 205.)

Campbell argues that Dr. Smith's report contradicts Dr. Phelan's findings because Dr. Smith assigned Campbell a global assessment of functioning (GAF) score of 50, indicating serious

4

symptoms or a serious impairment in social, occupational, or school functioning. (Tr. 206); Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000) [hereinafter DSM-IV]. However, a GAF score does not indicate an individual's functional limitations in the areas addressed by Dr. Phelan, such as accepting and following instructions, making decisions, concentrating, and responding appropriately to changes in a work setting. Rather, a GAF score measures an individual's "overall level of functioning" and is used for "planning treatment and measuring its impact, and in predicting outcome." DSM-IV at 32. Furthermore, Dr. Smith's assignment of a low GAF score is undermined by her objective findings, which indicate only mild to moderate limitations, as found by Dr. Phelan. *See Zimmerman v. Astrue*, No. 07-20766, 2008 WL 3471852, at **4 (5th Cir. Aug. 13, 2008) (per curiam) (affirming ALJ's finding that low GAF score was inconsistent with psychologist's "mild description" of claimant's impairments); *Foster v. Astrue*, No. 07-51242, 2008 WL 1983424, at **2 (5th Cir. May 8, 2008) (per curiam) (finding that treating psychologist's objective findings that claimant was cooperative and articulate with average cognitive abilities and intact memory "greatly undermined" GAF score of 48).

Finally, substantial evidence supports Dr. Phelan's assessment. In addition to Dr. Smith's report, a consulting physician reviewed Campbell's evidence of record in November 2009 and affirmed Dr. Phelan's assessment. (Tr. 228.)

Moreover, Campbell reported that she worked for months at a time during part of the period that she claims she was disabled due to her mental impairments. Specifically, she reported that she worked for five hours per day, six days per week as a laundry attendant from April through October of 2007. (Tr. 128.) In that job, Campbell assisted customers by making change or doing their laundry; washed, dried, and folded clothes; swept and mopped; cleaned washers and dryers; counted

5

earnings; and did paperwork. (Tr. 139.) Campbell also reported that she worked for six hours per day, five days per week as a cosmetic counter employee from January through March of 2008. (Tr. 128.) In that job, she sold cosmetic products to customers, cleaned, and shelved and displayed merchandise. (Tr. 137–38.) Campbell's work during part of the period that she claims she was disabled due to mental impairments is significant evidence that those impairments did not limit her basic ability to function. *See Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001) (affirming ALJ's conclusion that claimant's mental impairment was not disabling and finding it significant that claimant continued to work for some of the period that he claimed disability due to his mental impairment).

At an appointment at Lubbock Regional Mental Health and Mental Retardation Center (MHMR) in September 2008, Campbell reported that her mood was "pretty good," and she was noted to be cooperative and appropriate. (Tr. 191.) In January 2009, she told her treating psychiatrist that medication dramatically improved her motivation and desire to be around people. (Tr. 189.) In March 2009, Campbell told another treating psychiatrist that medication was helping and that she was sleeping well and looking for a job. (Tr. 185.) At that appointment, Campbell also reported that she experienced no change in her usual capacity to concentrate and decide; no change in her usual level of energy; and normal speed of thinking, gesturing, and speaking. (Tr. 182–83.) At an MHMR appointment approximately two months later, Campbell again reported that she was doing well and looking for a job. (Tr. 181.)

In July 2009, a Social Security Administration representative interviewed Campbell in person in connection with her application for benefits. (Tr. 124–25.) The representative observed that Campbell had no difficulty with reading, understanding, coherency, concentrating, talking,

6

answering, or writing. (Tr. 124.) In documents submitted in connection with her application for benefits later that month, Campbell reported that she took care of her dog and had no problems taking care of herself. (Tr. 151.) She also stated that she needed no reminders to take her medications or take care of her personal needs and that she could pay bills, count change, handle a savings account, and use a checkbook and money orders. (Tr. 152–53.) In addition, she indicated that she shopped once every two weeks, visited her cousins once per week, and talked to her children and others on the telephone daily. (Tr. 153–54.) She also stated that she enjoyed playing hand-held games, watching television, doing crossword puzzles, and using computers and the Internet. (Tr. 154.) She further reported that she followed written and spoken instructions well and handled changes in routine "ok." (Tr. 155–56.)

In October 2009, Campbell reported that she was able to care for her personal needs and had experienced no new mental limitations since her July 2009 report. (Tr. 162–63, 165–66.) At an MHMR appointment in January 2010, Campbell stated that she did well on her medications, and her treating psychiatrist concluded that her condition was stable. (Tr. 233.) At Campbell's next appointment in June 2010, Campbell told her treating psychiatrist that she was "doing OK." (Tr. 230–31.) In July 2010, Campbell reported that she had experienced no changes in her conditions and no new mental limitations since October 2009. (Tr. 170.)

At an MHMR appointment in January 2011, a physician's assistant rated Campbell's overall functioning at 7/10. (Tr. 272.) From April to August of that year, Campbell did not attend three of six scheduled MHMR appointments. (Tr. 260–70.) At the three appointments she did attend, Campbell reported that she slept a lot and tried not to let her depression get to her by going on walks. (Tr. 261, 265, 269.)

In August 2011, nurse practitioners who treated Campbell for hypertension observed that she was cooperative and exhibited an appropriate mood and affect. (Tr. 281, 285.) At an MHMR appointment in October 2011, Campbell reported that her mood had improved and that she walked her dogs daily. (Tr. 259.) At another appointment the same day, she told a nurse practitioner that she had more energy and felt better. (Tr. 277.) The nurse practitioner observed that Campbell was cooperative at that appointment. (Tr. 279.)

In view of the foregoing, the ALJ properly relied on Dr. Phelan's findings, which were based on "a careful evaluation of the medical evidence and do not contradict" the findings of Dr. Smith. *Villa*, 895 F.2d at 1023–24 (affirming ALJ's decision to assign greater weight to non-examining physicians' findings than to examining physician's findings). With regard to the relative weight that the ALJ assigned to the opinions of Drs. Smith and Phelan, a court "may not reweigh the evidence or substitute [its] judgment for that of the Commissioner." *Audler*, 501 F.3d at 447.

II.     The ALJ properly considered the effects of Campbell's anxiety.

Campbell argues that the ALJ failed to recognize generalized anxiety disorder as a severe impairment even though Drs. Smith and Phelan listed generalized anxiety disorder as one of Campbell's conditions. The ALJ explicitly acknowledged that Campbell was diagnosed with generalized anxiety disorder, but he concluded that major depressive disorder was her only severe impairment. (Tr. 22, 25.)

Campbell's argument does not require reversal. In *Adams v. Bowen*, 833 F.2d 509 (5th Cir. 1987), the Court of Appeals for the Fifth Circuit considered a claimant's argument that "the ALJ erred in acknowledging her significant impairment while failing to find it 'severe.'" *Id.* at 512. The court concluded that this argument did not require remand because that case "did not depend upon

8

a conclusion of the 'non-severity' of [the claimant's] condition[.]" *Id.* Rather, the ALJ in that case assessed the claimant's RFC and found her not disabled at step 4 because she could perform her past sedentary work. *Id.*

Similarly, in *Herrera v. Comm'r of Soc. Sec.*, No. 10-50576, 2010 WL 5421297 (5th Cir. Dec. 30, 2010) (per curiam), a claimant argued that remand was required because the ALJ did not explicitly determine the severity of two of his mental impairments, namely, his anxiety and learning disability. *Id.* at **3. The Court of Appeals for the Fifth Circuit rejected the argument because that case "did not turn on a finding that [the claimant's] impairments were not severe at step two; rather, the ALJ concluded that [the claimant] was not disabled because, despite his severe impairments, he retained the residual functional capacity to do other work." *Id.* The court also noted that any mental functioning impairment reflected in the medical records was incorporated into the ALJ's RFC determination. *Id.* at **3 n.2.

As in *Adams* and *Herrera*, the ALJ in this case acknowledged Campbell's anxiety but did not explicitly determine its severity. (Tr. 22, 25.) Similarly, the ALJ's decision in this case did not depend on the non-severity of this impairment. Instead, the ALJ assessed Campbell's RFC and determined that she was not disabled at step five because she could perform jobs that existed in significant numbers in the national economy. (Tr. 26.) Finally, like in *Herrera*, the ALJ's RFC assessment in this case accommodates any functional limitations that may be caused by Campbell's anxiety: the ALJ limited Campbell to non-complex work that does not require contact with the general public and requires only superficial contact with coworkers and supervisors. (Tr. 23.) Campbell does not dispute the ALJ's RFC assessment. As in *Adams* and *Herrera*, these arguments therefore do not provide a basis for reversal.

9

III. Substantial evidence supports the ALJ's credibility determination.

Campbell argues that the ALJ improperly discredited her testimony regarding the limiting effects of her symptoms. As part of his credibility determination, the ALJ noted that treating MHMR providers found that medication was effective in treating Campbell's condition. (Tr. 24.) He also noted that Campbell was found to be non-compliant with prescribed treatment. (Tr. 24–25.) Campbell disputes these conclusions.

Statements about a claimant's pain or other symptoms "will not alone establish that [she is] disabled[.]" 20 C.F.R. § 416.929(a). Symptoms render an individual disabled only to the extent that "alleged functional limitations and restrictions . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* § 416.929(c)(4). To the extent that an individual's statements about the intensity, persistence, and limiting effects of pain or other symptoms are inconsistent with objective medical evidence, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). An ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at 1024.

In this case, the ALJ acknowledged Campbell's testimony that she could not work due to her depression, was not motivated to do anything, did not get out often, and stayed in bed approximately twelve hours per day. (Tr. 24, 36, 39–40, 45, 49.) The ALJ then stated, "After careful consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they

are inconsistent with the [RFC] assessment." (Tr. 24.) Later, the ALJ explained, "I acknowledge that the claimant has some functional loss[;] however functional loss in and of itself is not disabling. . . . I find the claimant's allegations as to her limitations are not fully supported by the record. (Tr. 25.)

The substantial evidence that supports Dr. Phelan's findings also supports the ALJ's credibility determination, including his findings regarding the effectiveness of medication and Campbell's compliance with treatment. In addition, Campbell reported that her symptoms gradually increased when she ran out of her medication at an MHMR appointment in May 2009. (Tr. 181.) At an MHMR appointment in January 2010, Campbell reported that she had been out of her medications since November 2009 but that she did well on her medications. (Tr. 233.) At other MHMR appointments, Campbell stated that her medication helped her and "dramatically improved" her motivation and desire to be around people. (Tr. 185, 189.) Finally, at least one MHMR provider found that Campbell's depression responded well to medication, and two providers concluded that Campbell experienced a full response to medication. (Tr. 181, 191, 199.)

In view of the foregoing substantial evidence, the ALJ's credibility determination is entitled to judicial deference. *Villa*, 895 F.2d at 1024.

IV.    The ALJ did not substitute his judgment for a medical provider's opinion.

In his explanation of his RFC assessment, the ALJ noted that some of Campbell's symptoms were described as extreme at an MHMR appointment in August 2009. (Tr. 24, 208.) The ALJ also noted that Campbell was assigned a GAF score of 55 at that appointment. (Tr. 24, 208.) A GAF score of 55 suggests moderate symptoms. DSM-IV at 34. The ALJ explained that these findings were inconsistent and resolved the inconsistency by giving little weight to the finding that Campbell

11

experienced extreme symptoms. (Tr. 24.) The substantial evidence that supports Dr. Phelan's conclusions also supports the ALJ's conclusion in this regard.

Campbell argues that the ALJ improperly substituted his judgment for a medical provider's opinion in reaching this conclusion. This argument is without merit. Rather, the ALJ properly resolved an inconsistency in one of Campbell's medical records. *See* 20 C.F.R. § 416.920b(b) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have."); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (explaining that an RFC assessment must include "a resolution of any inconsistencies in the evidence as a whole"); *Zimmerman*, 2008 WL 3471852, at **4 (affirming ALJ's resolution of inconsistencies between assigned GAF score and treating source's other findings); *Foster*, 2008 WL 1983424, at **2 (same).

## Conclusion

For the foregoing reasons, the undersigned recommends that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Campbell's Complaint with prejudice.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to timely file specific written objections will bar

the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

    Dated:       May 23, 2013.

NANCY M. KOENIG
United States Magistrate Judge